We'll now move on to the next argument for today. That's Washington versus Dewey. Let me confirm that counsel's on the line. Mr. Talberg? Yes, good morning. This is James Talberg. Good. I can see you and hear you. You can see and hear me and the other panelists? Yes, I can. Good. All right. And Mr. Dooley? Yes, your honor. I can see and hear you and I'm present. All right. Good. So I've given you 10 minutes each. Mr. Talberg has reserved three minutes for rebuttal. That gives him seven minutes out of the game. You may proceed, Mr. Talberg. Thank you. May it please the court, for the record, my name is James Talberg and I represent the defendant appellants, Detective Frank Napolitano and Lieutenant Francis McGue, both of whom are members of the East Hartford, Connecticut Police Department. The district court's decision should be reversed based on its denial of qualified immunity because based on the undisputed facts, there was probable cause for the plaintiff appellee's arrest or at the very least, arguable probable cause for the three criminal charges at issue. First, robbery in the first degree. Second, conspiracy to commit robbery. And tragically, because there was a murder, a death involved in connection with that, Mr. Washington was exposed to a felony murder charge. So let me focus on the undisputed facts that compel the conclusion that qualified immunity was denied to the law enforcement professionals because the material facts regarding the murder of one Marshall Wiggins are really not in dispute. There was a question regarding whether Mr. Washington was an active, willing participant in that conspiracy or whether as he contended, he was forced to participate in the robbery under duress. But if Mr. Washington was forced to participate under duress, that would not deprive a finding or would not defeat a finding of probable cause. I saw that argument, Mr. Tallberg, and I'm a little confused by that. I don't know what case you would cite for that. Suppose you let me give you a hypothetical. Suppose a police officer sees someone pull a gun, pointed at another individual. That individual, in response to that, pulls out a gun and shoots them in self-defense. You're suggesting that a police officer could sign an affidavit before a judge establishing probable cause, leaving out that the gun was pulled by the other person first and just disclose to the judge, I witnessed this person shoot another person. You're suggesting because it's an affirmative defense, that a judge can't consider that in determining whether or not there's probable cause? Is that what you're suggesting? No, not at all, Your Honor. But I think that example is the extreme example that is inapplicable. The officer did disclose. For one, in that example, the defendant, it would be Mr. Washington, had a gun. That's not the case. There was no disclosure. What they did not disclose, which I think is analogous to this, and you can correct me if I'm wrong, is the fact that Mr. Washington said that he pointed the gun at me. There was a warning shot fired. He pointed the gun at me, told the person to give me the glasses, and then when the murder happened, I fled, not even realizing I had the glasses in my hand. All those facts, you know, there were a lot of other facts that were back and forth on, but to me, those are the critical, certainly exculpatory facts that a magistrate judge... Excuse me? I would guess I would... Go ahead. I'm sorry to interrupt. No, I was just saying those are the critical, exculpatory facts that you would think a magistrate judge could be impacted by, especially if it was deemed to be credible, and the first affidavit referred to all the witnesses, including him, as credible. So I don't... You know, obviously, this is just whether it's a disputed fact that's material, and I'm having a hard time understanding if Mr. Washington by those facts wouldn't be material on probable cause. Well, with respect, Judge Bianco, I would suggest and respond that that analogy is not applicable here, because in this case, there was no dispute that there was one gun, and only one person fired the gun. There was no suggestion that Mr. Washington had a gun or fired a gun. Why isn't it... You're skipping the point about the gun being pointed at him. Why isn't that important? The gun is pointed at him, and the other person is told to give the glasses to him. Why is that? Well, because one, there was perhaps a sheer impossibility, and this is where the court made a plain error. The court, the district court, in its ruling specifically noted or stated that Mr. Washington was in the seat behind the driver, Mr. Wiggins. There's no dispute that was incorrect, and I can cite you to the record where that was stated. That's at JA 960-961. The district court stated Mr. Washington was positioned directly behind Gaston rather than diagonally in the back seat. It was to the left. But in that type of situation, wouldn't it be the officer's, the argument would be the officer's obligation to present that exculpatory evidence in the affidavit and maybe note what you're noting so that the judge who's issuing the warrant can decide whether it's impossible or not. I mean, I understand your argument, but you know, there was a shot. I think there was a bullet hole in the back of the car, right, from the warning shot. Yes, which again, the district court mischaracterized that as in the rear, as if it was the rear window. There's no dispute it was in the window directly behind the driver where the court misperceived and thought Mr. Washington was sitting. But again, to your point, Judge Bianco, there were certain facts that the officers believed Mr. Washington was being credible about because they could be tested. We had video, surveillance video that showed him with Mr. Gaston going into the store, coming out of the store, getting into the vehicle with Mr. Wiggins and Mr. Gaston. But what happened in the car, the officers did not believe Mr. Washington was being credible. They felt he was down. But isn't that disputed? I know they said in their depositions, they believed he was a participant, but they said he was credible in the first affidavit. And I saw the plaintiff testified that Napolitano, when he was arresting him, said this is not our call. This is not our work. We're not doing this. This is not what we want. We have to come get you. So I understand, you know, that doesn't necessarily mean he doesn't believe that he's guilty, but those are all issues of fact. We have to construe it most favorably to the plaintiff. And his argument is that they believed him to begin with. That's why they arrested Gaston based upon what he said. And the only thing that changed is that they wanted leverage because they were worried that he wouldn't testify. Your Honor, I would submit that the detectives did put in the warrant affidavit all of the facts that established probable cause. In fact, they did note in the warrant that Mr. Washington stated he had no knowledge of the intended robbery. Gaston acted on his own, that Washington was scared, that he told Gaston he was crazy and he wanted no part in it. But they didn't have to include every single detail. They had a right as law enforcement professionals to determine what they felt was... Listen to this I don't want to go in circles with you, but Washington was sitting in the backseat of the vehicle and could have exited the vehicle if he truly had no part in the robbery. But the fact that he would point to obviously that was incomplete about that was... The reason I didn't do that is that a gun was pointed at me and I thought my wife was in danger essentially and the whole... It happened obviously very rapidly, but that sentence goes directly to the issue. You're basically arguing to the judge in that sentence like he could have gotten out of and he had the glasses in his hand and his point was a gun was pointed at me and I didn't even realize I had the glasses in my hand and those facts were left out. Well, that's not actually even what Mr. Washington stated. He stated that the gun was going back and forth. No, I read that this morning on page I think it's 899 or 98. I went back and looked at that. He specifically said the gun was pointed at me. He also said when I got out of the car, I realized I had the glasses in my Well, that is the critical factor on it that Mr. Washington fled the vehicle with stolen property and I would cite you. I think the most compelling evidence in the record is the finding from the judge in the criminal trial where he stated that Mr. Washington displayed larcenous intent when he accepted the glasses from Mr. Wiggins while Gaston held the seat in that gunpoint. That's at JA 905. That demonstrated criminal intent and it's not the detective's decision to determine whether that's true. He said he didn't realize they were in his hands. And that formed the basis of his duress defense, which is what the court ultimately found, but that's for the jury, your honor. That's not for the detective to decide. That's proof beyond a reasonable doubt. The officer only had to satisfy the much lesser standard of probable cause or arguable probable cause to be entitled to qualified immunity. Thank you. I see I'm past my time, so I'll reserve my three minutes. Yes, you've got three minutes for rebuttal. Mr. Dooley. Thank you, your honor. May it please the court. I'd like to pick up on this colloquy that Judge Bianco started and I'd say that the most compelling evidence in this record may be the probable cause hearing that actually was held, albeit only on the felony murder charge. Under Connecticut laws, you may know there's a defendant has a right to a probable cause hearing on any crime that could result in a sentence of death or life in prison. So the probable cause hearing that occurred here was only on the basis for charging him with felony murder. But the judge, Judge Crawford, explicitly found that that question depends on whether there's probable cause to charge him with robbery because that's the predicate felony. And the portions of the transcript are included in the joint appendix at the beginning of page 881. And you can see if you go through the questioning from Judge Crawford during that hearing and then review her written ruling where she found that there is no probable cause to charge Mr. Washington with felony murder. It's based. So what? I mean, we're not bound by that, right? We're going to we have to decide now whether there was probably. Yes, she found what we're focused on on the post-arrest hearing. We're focused on the facts at the time of arrest. I should have made this clear at the outset. What I think is relevant about that is it demonstrates what a corrected affidavit would show a neutral magistrate in this case. So Judge Brian, I want to get to that. So it seems to me that the issue is what exculpatory statements is an officer obliged to put in a complaint. This complaint included the denial, the defendant's denial of involvement and knowledge. But the suggestion is that it had to say more. It had to say that he claimed that the gun was pointed at him. He had to say that he claimed that this was direct. It had to include his explanation as to why he left the vehicle with property from the vehicle. Is that is that the position that you're taking? Essentially, yes. And the defendants acknowledge that they have to include relevant exculpatory information. And I'll point out Judge, sorry, Detective McGue conceded that the fact that Gaston had a gun and fired it is relevant. That's in the record as well. So there's a concession about the relevance. My concern is that people who get arrested often make denials. And so if we're really announcing a rule that an officer has to include every detail of every denial, that's I think that's a new rule. And so this is a situation where the basic denial was there. You're saying that they needed to include more detail, right? Yes. Why? Why is that? If a magistrate judge hears that this person has denied any involvement and any knowledge, why is it necessary to hear the details of the arrest defense and the explanation for the disposal of stolen property? So the omitted information are the details that make Mr. Washington's denial of culpability credible. And of course, the defendants themselves found it to be credible and didn't charge him with any offense for three months and put him in witness protection. That, among other things, is one of the details that Judge Crawford pointed to in holding that there was no probable cause to charge him with felony murder. So I think the key facts, and Judge Bianco put his finger on one of them, are that there's a gun involved here. Washington says, I didn't even know he had a gun. And the gun was fired through one of the rear windows, the rear driver's side window, and pointed at Washington. And they found all of these things credible. They described him as a prudent and credible witness. These details are included in- Wait, wait a minute. They found that credible? They found all those details credible? What's your basis for saying that? Because they based an arrest warrant for Gaston on the testimony of Washington, whom they described as prudent and credible. They did not arrest Washington or even suggest that he might be charged with robbery or felony murder. They put him in witness protection for three months, never kept any tabs on him, allowed him to go to a Labor Day party after the prosecutor told him to write up an arrest warrant, and gave no indication that they thought he was guilty of this offense. And then there's admissible evidence that when Mr. Washington said, what's going on? Why are you arresting me now? Detective Napolitano said the warrant is bogus. That's it. He didn't even deny saying that in his deposition. So the idea that there's not disputed issues of fact here, I find very hard to swallow. I think that the evidence is sufficient to conclude that the defendants should not be entitled to qualified immunity as a matter of law based on their conduct and the fact that they put him in witness protection. Let me just focus on that point though. So at a minimum, it's disputed whether or not they continue, they believe from day one that his entire story was credible and whether they continue to believe that throughout, even when they were doing the arrest warrant. That's a disputed fact, right? Correct, your honor. I mean, again, certainly, certainly if they thought his entire statement was credible, um, they would, they would have to disclose the, the, uh, I think an argument can make regardless of what their view was of his credibility. They would have to disclose it anyway. Certainly if they believe it was credible, leaving that out would be problematic. And then your honor, wait, wait. So your view is that the subjective, uh, views of the agent are relevant. So no, I think, I think I'm asking Mr. Dooley. I also think that they're relevant. Now you, obviously the officer's subjective belief that probable cause does or does not exist is not dispositive, right? That's the job of the neutral magistrate to make that determination. But I don't see how it would not be relevant to that magistrate to know that these officers who swore the affidavit believed Mr. Washington three months earlier when he said he wasn't involved and then conducted no additional investigation to discredit him and put him in witness protection. And again, I keep coming back to this, but these are the facts that came out during the probable cause hearing on felony murder or the basis of that judge's conclusion that there was no probable cause to charge him with felony murder because there was no probable cause to charge him with robbery. But there's, you know, there's four the evidence against Mr. Washington. The only one who concluded there was probable cause was Judge Dewey, who was the only one who did not have this omitted information in front of her. The only one who saw just the arrest warrant affidavit for Mr. Washington that we think was incomplete and inaccurate and not the omitted information that we think is relevant. All the judges who Washington's denial of culpability and that they omitted information tending to make that credible. And most importantly, perhaps the gun and the fact that the gun was pointed at Mr. Washington during this. Also, the fact that he ran away not knowing that he was holding these glasses in his hand, that he turned himself in to the police voluntarily, that he voluntarily submitted to a buckle swab, to allowing them to examine his medical records, to gun residue testing. All of these things are completely inconsistent with culpability. And they're the reason, frankly, that these defendants did not charge Mr. Washington in May when they had all of the same information before them and nothing less than the information that they had. One small detail. Those glasses, were they prescription glasses? You've stumped me. I actually don't know. My assumption was that they must be somewhat valuable as there was an armed robbery to get these glasses. But I don't know the answer. I mean, nobody would steal my prescription glasses because they couldn't use them. I think that's why, I won't speak to that, but Gaston, the actual robber in this instance, did ask for the glasses and the rings. And so it struck me that they must have appeared to be valuable. But I think the critical fact is, again, Mr. Washington said, I didn't even realize I had them in my hands. And that would be, I think the defendant's position is that's the basis for thinking. And maybe he didn't think a murder was going to happen, but he was part of this robbery after all. He left the glasses. But again, he said, I didn't even know they were in my hand. A gun was pointed at me and he said to hand it over. So I took it. And then as soon as I realized it, I threw it away. That's in his written statement. That's in Detective Napolitano's statement, but it's not in the affidavit that we present to the judge. Okay. But the affidavit says that he denied in knowledge or involvement, but your view is that it was imperative that it also say that he had an explanation for why he had the sunglasses. Right. That there was a lot of the omitted information is what makes him believable. Again, personally, I think the fact that the gun is pointed at him might be even more important than the fact that he didn't know he had the sunglasses. But both of those things were omitted from the affidavit. I think Judge Bianco's example of the self-defense situation is interesting, but maybe an even more apt analogy is a bank teller. Say there's a bank teller who is stuck up by an armed robber who says, go get that money and give it to me. He participates in the robbery and maybe there's some information to believe that he knew the robber. But if the police officers, after interrogating the bank teller, conclude that he didn't know the robber was coming in with a gun, he wasn't involved in it, and they believe him, I don't see why that has to be an affirmative defense later on a trial. That's information that the magistrate needs to know. And again, I think it's really important that the only judge who concluded there was probable cause here is the one who didn't have the information that was omitted. But going to your analogy, Mr. Dewey, in this case, the officers didn't say we believed him in all respects at the time that we could have first arrested him. They didn't say that. They didn't say that at a hearing. They didn't say that at any point. They deny it now, and I think that is, at a minimum, a fact question. Their surrounding conduct belies their statement now that they believe there was probable cause. And there is, at a minimum, evidence in the record suggesting that Napolitano said, this is bogus. That's in there. That's his statement. He's a defendant in this case. And importantly, he didn't deny it when he was questioned about it as a deposition. So at a fair minimum, we have disputed issues of fact that precludes summary judgment on the probable cause question. And also, if you agree that there are disputed issues of fact, precludes jurisdiction in this case, which I think is something that the defendants haven't adequately addressed. I don't want to go too far over my time. Well, we made you go. Any other questions, Julian? Thank you. Okay. All right. Thanks. All right. Mr. Talberg, you've got three minutes, everybody. Thank you, Your Honors. If I may, go back to the duress. Even if you included the duress defense in the warrant, it does not deprive the court of probable cause. And this was stated plainly by State's Attorney Zegaya, who was also an affiant on the warrant. And he plainly stated, this is in the record at JA 515 and 516, that the reason there was probable cause is because Washington took the glasses, he fled the shooting scene with the glasses, and he threw them in the woods. To the extent that he had a defense, that is something that would be an affirmative. That was my first question to you, though. And you suggest I misunderstood your argument. But now you're reasserting it, that an affirmative defense, whether it be duress, self-defense, is not something that a judge issuing an arrest warrant on the issue of probable cause can consider. And therefore, the police officer has no obligation to present that information. That's what you're suggesting, right? I believe that the affidavit contains sufficient facts for the lesser standard of arguable probable cause, entitling the detective to- But you believe there's no obligation. It's your position. There's no obligation to present exculpatory facts that go to an affirmative defense. On this case, your honor, on these facts, I don't believe there was. And if you add that back in- What case do you cite for the proposition that exculpatory facts that relate to an affirmative defense do not need to be disclosed to a judge on a probable cause? I would say, well, what I would distinguish, there's not a case right on point with these two people who have a bad witness lineup or you have false statements. It's not like Galeno, where you have the withholding of exculpatory forensic information. So the cases that we know of in the Second Circuit that would require that type of information, that's not this case, your honor. Judge Bianco asked about exculpatory facts. I guess the exculpatory facts here are just the right. Yeah. And what I would go back to, your honor, is that an officer does not have an obligation to include information that is not deemed to be credible. And so, for example, it's not disputed in the record at JA 282 and JA 415. The officers were consistent that they believed- If the officer has an alibi, runs into an alibi witness and thinks the alibi witness is not credible, you're suggesting there's no duty to disclose that as exculpatory? I'm a little confused by that argument. Well- If the officer can determine which exculpatory evidence is credible or not? I'm not suggesting that. What I'm suggesting is that the police officer is not required to be a law professor, as in Gonzales v. Schenectady, to know all of the nuances of the law. State's attorney Zagaya was conversant with these nuances about affirmative defenses. Detective Napolitano is not expected to have that level of knowledge. That's why qualified immunity gives him this breathing room to make reasonable but mistaken judgments. He included in the warrant application all of what he deemed to be the relevant and important facts and even exculpatory facts, like Mr. Washington's statement that he couldn't believe what was happening. He was afraid. He didn't know that there was going to be a robbery. He wasn't a participant. He included all of that level of detail. He didn't include the fact that he didn't know he had a gun, but that omission alone, or that omission combined with the other alleged omissions, does not deprive or obviate probable cause. Am I correct that before this affidavit was prepared, the government was ready to put Washington on the stand and to testify against him? Well, that was a charging decision. Again, I go back to State's attorney Zagaya, who I think was perplexed by that. When he first saw the file, this is in the record, he asked, why wasn't Washington charged? He sought the arrest warrant for Washington based on what I've described, that he fled the scene with the glasses. That put him at jeopardy on the robbery charge and conspiracy, and ultimately, the murder charge. If you're preparing to offer his testimony in a criminal trial against Gaston, it seems to me that it's odd to say that there was no reason to include statements that he made on the ground that people just deny what they say, and they may not be what they've done, and they may not be credible. Well, Your Honor, it's not uncommon that persons in this situation where there's a shooting, and there's two people in the car, downplay their involvement. Of course, but you were going to offer him his testimony to convict somebody else. I don't know, I'm not sure how you can say that there was no reason to take his credibility into account. I think this is why the prosecutor was very candid that at the outset, he wasn't going to in the car, and whether he was a co-conspirator. At 549, Zagaha's explanation was that he was charging him because he didn't want to be perceived that he's getting favorable treatment. Judge Bianco, I'm having trouble hearing you. Dead here. How about now? Can you hear me? Still very muted. Barely. It wasn't a good question anyway. Don't worry. I see I'm beyond my time. The reasons stated here today, Your Honors, those articulated in our brief, we believe the officers were entitled to qualified immunity, and that the district court should be reversed. Unless there are any additional questions, I'm willing to rely on the brief. No, we will reserve decision. Thank you both.